25433. HAMMONTREE *et al. v.* MORELAND.

DECIDED JULY 14, 1936. REHEARING DENIED JULY 23, 1936.

*Jesse M. Sellers,* for plaintiffs in error.

*H. H. Anderson, R. Noel Steed,* contra.

STEPHENS, J. The sole issue in this case, which is a suit by T. H. Moreland against C. T. Hammontree and Mrs. J. J. Gregory, upon two notes signed by the defendants, is whether the defendants, who signed the notes after they had been executed by Seth Gregory, and after they had become due, signed the notes solely in consideration of stopping a criminal prosecution which had been instituted by Moreland, as the payee of the notes, against Seth Gregory, the original maker of the notes, charging Seth Gregory with a violation of sections 67-9906 and 67-9907 of the Code

of 1933, making it penal for a purchaser of personalty to dispose of the property the title to which has been retained by the seller as security for the debt. It appears from the evidence that Seth Gregory, who was the son of Mrs. J. J. Gregory, and the son-in-law of C. T. Hammontree, had executed the notes for the purchase-price of two mules, the title to which had been retained by Moreland as security for the purchase-money; that, before the signing of the notes by the defendants, the maker, Seth Gregory, had moved from the county and had gone to a distant part of the State, taking the mules with him; that a few days after Seth Gregory's departure, Moreland instituted foreclosure proceedings against the mules, the levying officer made a return of nulla bona, and Moreland caused to be issued a warrant charging Seth Gregory with a violation of the Code, §§ 67-9906, 67-9907; and that with knowledge of these facts Hammontree signed the notes. While it appears from the testimony of Hammontree that he signed the notes solely for the purpose of stopping the criminal prosecution against Seth Gregory, he also testified that he signed to prevent the arrest of Seth Gregory, and to prevent foreclosure on the mules. It appears from the testimony of Moreland, that after he had instituted the foreclosure proceedings, and the next day after the criminal warrant had been taken out, Hammontree came to him and wanted to know what he could do to keep the plaintiff from foreclosing on the mules, and said that his daughter and grandchildren were with Seth Gregory and they did not have any credit, and he did not want his blood to suffer that way, and Moreland told Hammontree that if he would sign the notes Moreland would "stop the execution of the papers" and would give Hammontree two years to pay the notes if he could not pay them in one year; that Moreland told Hammontree that it made no difference about Mrs. Gregory signing the notes, as he (Moreland) was satisfied with Hammontree's signing the notes; that Hammontree and the constable took the notes to Mrs. Gregory, and the constable later returned the notes to the plaintiff; that the criminal warrant was not mentioned between the plaintiff and Hammontree; that the warrant was never settled; that after the defendants signed the notes the "plaintiff held up the mortgage foreclosure," that about eighteen months after the defendants had refused to pay for the mules, the plaintiff had the mules levied on.

The plaintiff testified that he did not see Mrs. Gregory at all. Mrs. Gregory testified that she signed the notes about two years after they were due; that she signed them to keep her son, Seth Gregory, from being brought back; that at the time she knew there was a criminal warrant out for Seth, and that "they would put him in jail," and that this was the only reason that she signed the notes; that Hammontree and the constable came to her house, and Hammontree stated that she and he would have to sign the notes to "keep them from going after Seth;" that nothing was said about a mortgage; that she did not see Moreland; and that he never asked her to sign the notes. Her testimony was uncontradicted.

It is not necessary to detail other evidence. The jury returned a verdict for the plaintiff. Both defendants moved for a new trial on general and special grounds. The motion was overruled, and the defendants excepted.

■ It was contended by counsel for the defendants that the plaintiff knew that the mules had been taken by Seth Gregory to a distant part of the State, the foreclosure proceedings upon which a nulla bona was entered were not instituted in good faith, that the mortgage foreclosure "was had merely for the purpose of having a nulla bona on the execution to be used as the basis for a criminal warrant against Seth Gregory," and that the execution with the entry of nulla bona was given by the plaintiff to a constable who was without authority to execute it. Irrespective of the motives actuating the plaintiff in instituting the foreclosure proceedings, whether they were bona fide or not, it appears from the evidence that he was in fact instituting such proceedings, and it does not appear that the proceedings were illegal. Even if the fact that the foreclosure proceedings were not bona fide could avail the defendants anything by way of defense, this fact does not appear conclusively from the evidence; and it can not be held, in passing on the general grounds of the motion for new trial, that the promise to pay the notes in consideration of the plaintiff's refraining from pushing the foreclosure proceedings was invalid, and that the foreclosure proceedings had not been instituted bona fide. The plaintiff had a right under the law to institute foreclosure proceedings against the mules to collect his debt which was secured by the contract which the plaintiff had

with Seth Gregory. Whether he had a right to recover is immaterial. Therefore any promise which either defendant may have made to pay this debt, in consideration of the plaintiff's withholding further prosecution of the foreclosure proceedings for a period of one or two years as testified to by the plaintiff, was a promise given for a consideration, and therefore was enforceable as a contractual obligation. The plaintiff, Moreland, testified that when he had the negotiations with Hammontree nothing was said about the criminal prosecution, and, in reply to Hammontree's question as to what could be done to prevent the foreclosure upon the mules, Moreland stated to Hammontree that if Hammontree would sign the notes Moreland would "stop the execution of the papers" and would give Hammontree two years to pay the notes if Hammontree could not pay them in one year. It appears from the evidence that the foreclosure proceedings were abandoned, and no levy was made on the mules until about eighteen months after the defendants had refused to make payment. It is therefore clearly inferable from the evidence that Hammontree signed the notes in consideration only of the plaintiff's deferring the prosecution of the foreclosure proceedings for a period, which the plaintiff did. The evidence therefore authorized the verdict as against the defendant Hammontree.

■ The evidence is conclusive and without dispute that no part of the consideration for the signing of the notes by Mrs. Gregory was the discontinuance of the foreclosure proceedings, but the sole consideration, if any, for the signature of the notes by her was the discontinuance of the criminal prosecution against her son, Seth Gregory. Mrs. Gregory's promise to pay the notes was void and unenforceable on the ground of either no consideration, or that the consideration was illegal, in that it was a discontinuance of a criminal prosecution. *Lucas* v. *Caslelow,* 8 *Ga. App.* 812 (70 S. E. 184).

■ The defendants assign error on a charge of the court wherein the jury was instructed that where an agreement is founded partly on a legal consideration and partly on an illegal consideration, the legal consideration is not invalid, but the agreement is binding on the parties. This charge was excepted to, not on the ground that it was an erroneous statement of the law, but on the ground that it was not adjusted to the evidence, in that the

evidence failed to show a legal consideration for the execution of the notes. The evidence with reference to the transaction between Hammontree and Moreland shows a legal consideration for Hammontree's signature to the notes. Therefore, as respects Hammontree, there is no merit in this ground of the motion for new trial.

■ While it appears that during the trial the court examined Hammontree as a witness, it does not appear that in so doing the court expressed any opinion on the facts, or that the examination was improper and prejudicial to the defendant.

■ A general exception to the charge of the court as a whole, as not applicable to the issues made in the case, is insufficient to present any question for determination.

■ The charge of the court that the contract would be construed as having been made for a legal rather than for an illegal purpose was not objectionable on the ground that the construction of a contract is a question of law for the court, and not a question of fact for the jury. The charge had reference to the conduct and motives of the parties in the execution of the contract, which necessarily was a question for the jury, rather than to the construction to be placed on a contract after it has been executed, which is ordinarily a question of law for the court.

■ The evidence authorized the verdict for the plaintiff against Hammontree, and no error appears. The evidence was insufficient to authorize the verdict against Mrs. Gregory, and the court erred in overruling her motion for new trial. The judgment is affirmed as to Hammontree, and reversed as to Mrs. Gregory.

*Judgment affirmed in part and reversed in part. Jenkins, P. J., and Sutton, J., concur.*