I concur in the judgments, am in full accord with the majority opinion as to all fundamental principles of law presented therein and necessary to a determination of the issues submitted, and I agree with what I conceive to be a correct interpretation of the language used. But I fear that some parts of the opinion, particularly if considered out of context with the whole, may give rise to interpretations inconsistent with my own views and, I believe, those *Page 881 
of other members of the court. I will confine this discussion generally to an effort to set forth with some degree of clarity my construction of the opinion in those particulars considered to be capable of misconstruction.
The Public Service Commission is the only body in this State having the power to fix rates for public utilities. Its powers are in no sense judicial and may not be reviewed by the courts as such. Courts of equity do, however, have the authority and the duty to entertain entirely independent proceedings instituted by a public utility and directed to the court, properly setting forth that an order of the Public Service Commission providing rates for the complaining utility is presently causing confiscation of its property, and to enjoin the enforcement of such order, if the utility produces proof in court clearly showing that it is being thus deprived of its constitutional rights and that it is without adequate remedy save in a court of equity. The courts will then determine only the question of actual confiscation, and will not directly or indirectly fix rates, either in an interlocutory hearing or upon a final trial. Whether a court of equity which, in an interlocutory order, restrains the enforcement of a rate schedule set up by the Public Service Commission will go further and attach to such order a condition limiting the amount of additional revenue the utility can collect while thus without regulation as to rates by the Public Service Commission, is a matter resting in the sound discretion of the trial court.
The majority opinion so positively demonstrates these controlling principles that it is considered not subject to misinterpretation in these respects, nor, in my own opinion, to question as to the soundness of its conclusions.
A court of equity in an interlocutory hearing has fact-finding powers, and this court will not generally disturb an interlocutory order supported by some evidence; but where it is made to appear that the order is based upon an erroneous interpretation of the law materially affecting the results, it will be set aside on that ground, and, in an appropriate case, the case remanded for further consideration. See Ballard v.Waites, 194 Ga. 427 (21 S.E.2d 848); Washington NationalInsurance Co. v. Savannah, 196 Ga. 126 (26 S.E.2d 359);Colclough v. Bank of Penfield, 150 Ga. 316 (103 S.E. 489);Dowling v. Doyle, 149 Ga. 727 (102 S.E. 27). *Page 882 
In the present case the restraining order granted was demanded by the evidence. The evidence, in some instances entirely without contradiction, and in others the only reasonable inference and deductions possible from the factual and opinion statements presented, clearly renders the condition erroneous, in that confiscation would continue to some undetermined extent in spite of the additional revenue authorized. Still other evidence, much of it largely opinion evidence, could have been accepted by the Judges of Fulton Superior Court as clearly establishing the whole or part of other claimed expense items, or found by them to be insufficient for that purpose.
When the court found confiscation, it could have stopped there. The judges were not required to attach a condition to the restraining order, but since they considered it proper to do so, the condition should have permitted the utility to set rates sufficient to produce an income adequate to avoid confiscation of its property, to the extent that such action is warranted by the pleadings and required by the evidence produced in the lower court.
It is clear from a consideration of the opinions of the Judges of Fulton Superior Court filed in the case, which opinions are referred to in the formal order now under review as being attached thereto and are a part of the record before us, that the particular condition attached to the order resulted from an erroneous interpretation of the law in certain material aspects and was not a condition fixed entirely upon a finding of fact by the lower court after a full consideration of all of the evidence in the case, some undisputed, but other matters requiring the court below to employ its fact-finding powers upon an interlocutory hearing. The law was never correctly applied by the judges to the evidence, and the extent of confiscation thereby determined. Though the "test period" doctrine is unsound as it was applied to this case, items of expense, about which there was sufficient evidence to warrant a finding that such items, or some parts thereof, should have been allowed, were not considered at all in fixing the condition, the court apparently proceeding upon the theory that the commission would later provide for the recovery of these items if the "test period" rates did not produce adequate income. The petitioners' demands for consideration of other *Page 883 
items of expense were denied on the theory that, if such alleged losses did occur, they could and would be recovered from rates to be fixed by the commission in the future. The majority opinion of this court shows this legal position to be untenable. When a court of equity in an interlocutory order restrains the enforcement of a rate order of the Public Service Commission and considers it proper to attach a condition limiting the amount of revenue which the utility is permitted to raise while thus free from the rate regulations enjoined, it should attach such condition only after allowing credit for all items of expense clearly proven to be necessary to future operations, including not only those not in dispute and those established by every fair and reasonable deduction from the evidence, but also such other items, or parts thereof, if any, as the court, acting in its capacity as a fact-finding body, may find after a full consideration of all of the evidence to be clearly proven and proper to be considered under the rulings of this court. On the other hand, while a court of equity should right a clear present wrong when properly presented to it, it can do no more than that in such a case as the one before us. Only expenses proven to be necessary to future operations are pertinent to the issue here. Rates are fixed to cover operating expenses to be incurred in the future, not to recoup past losses; and the courts in passing upon the questions of confiscation should consider only the items of expense clearly proven as reasonably certain to be incurred in the future and properly chargeable to the period considered for rate-making purposes.
Proven expenditures of the nature usual to the business in periods antedating the application for relief are entirely proper for consideration, and, unless rebutted, should bear heavily in the determination of future expenses of operation; but they are not absolute criteria, and I believe that nothing in the opinion of the majority of the court should be construed as holding that any designated expenditure of a particular amount in the past must be accepted as a definite and final amount to be allowed by the lower court in preventing future confiscation, unless it definitely appears that such item will not be less in the future. Nor do I think that its effect is such that the trial court is prevented from determining that a part of a claimed item of expense, not in the *Page 884 
nature of a past loss, is chargeable to future years, rather than to the present period used for rate-making purposes, where the evidence will support such a finding as, for example, in the matter of "rearrangement and changes" expense items. It must be accepted as a sound proposition that a court of equity, in such a case as the one here, has as much discretion as the commission, if not more, in allowing and disallowing expense items claimed, and is invested with the discretion to disallow such items where the necessity therefor is not satisfactorily proven to the court. While it is true that the commission cannot substitute its judgment for that of admittedly capable and efficient management, yet neither it nor the courts are to be controlled entirely by the will of management; certainly, when the utility comes into a court of equity for relief in a matter generally under the jurisdiction of the commission, the utility must carry the burden of proving that its operations are efficient and that every item of claimed expense is a reasonable and proper charge against the public served by it. This burden is — and ought to be — heavier than the burden before the commission.
All that is said here and in the majority opinion about the facts of this case pertains, of course, only to interlocutory proceedings. The facts may be entirely different upon final trial. The real purpose of all the discussions of the detailed facts was to show that the condition attached to the order illegally restricted the petitioner and resulted in further confiscation. I believe that it was not the purpose of this court generally to inquire into the evidence and relate certain facts for any other purpose or to bind the lower court in any instance where it might in the exercise of its fact-finding powers reach a different result from a consideration of the evidence.
It is further my understanding that this court holds that the lower court cannot place any restraint whatever upon the commission's right to promulgate and place into effect a new rate order at any time, and without any restriction on account of any condition in the restraining order. To place such a restraint or restriction upon the commission would be but to indirectly assume regulatory powers over utilities and illegally circumscribe the commission in the future exercise of its constitutional duty. The *Page 885 
petitioner is entitled, in the proceedings now before the court, to a restraining order against the enforcement of the confiscatory rate order of the commission, but to nothing more.
Furthermore, it must be resumed that all further action on the part of the commission will be taken in the light of the law as it has been interpreted by this court. If the commission subsequently puts into effect another confiscatory order, the petitioner has its remedy in the courts.
 *Page 1